CHAD A. READLER
Acting Assistant Attorney General
JOSEPH H. HARRINGTON
United States Attorney
MICHAEL J. GERARDI
Trial Attorney
GARY FELDON
Trial Attorney
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW
Washington, DC 20530
Telephone:  (202) 514-4686
Fax: (202) 616-8460
E-mail: gary.d.feldon@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD OF GREATER WASHINGTON AND NORTH IDAHO, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; *et al.*, <br><br> *Defendants*. | Case No. 2:18-cv-00207-TOR <br><br> **REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN ALTERNATIVE, FOR SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................1

I.   Plaintiffs Have Not Met Their Burden to Establish Article III Standing. .............1

    A.   Plaintiffs Have Not Demonstrated an Injury in Fact. ...............................2

    B.   Plaintiffs Have Not Established Redressability. ...................................3

II.   Plaintiffs' Claims Are Not Justiciable Under the APA. .......................................5

    A.   The Challenged Aspects of the 2018 Are Not Final Agency Actions. ......5

        1.   The FOAs are Not the Consummation of HHS's Grant Award Process. ...............................................................6

        2.   No Legal Consequences Flow from the FOAs. ............................7

    B.   Plaintiffs Have Not Rebutted the Presumption that HHS's Grant Awards Are Committed to Agency Discretion. ....................................11

III.  Defendants Are Entitled to Summary Judgment on the Merits of Plaintiffs' Challenges to the Tier 1 and Tier 2 Funding Opportunity Announcements. .....12

    A.   The 2018 Tier 1 FOA Properly Funds Replication of Programs Proven Effective through Rigorous Evaluation, as Congress Required. ...........16

        1.   SMARTool and TAC Are "Programs." ......................................16

        2.   The 2018 Tier 1 FOA Funds "Replication" of Either the SMARTool or TAC Program. ......................................18

        3.   The SMARTool and TAC Programs Have Been "Proven Effective" Through "Rigorous Evaluation." ...............................20

    B.   The 2018 FOAs Provide Funds to Both SRA and Sexual Risk Reduction Programs Without Unlawfully Favoring Either. ..................20

    C.   The Administrative Record Amply Supports HHS's Approach to Considering Applications for Tier 1 and Tier 2 TPP Program Grants. ...........................................................22

1

CONCLUSION..........................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alan Guttmacher Inst. v. McPherson*,
   597 F. Supp. 1530 (S.D.N.Y. 1984), *aff'd*, 805 F.2d 1088 (2d Cir. 1986) .............12

*Am. Hosp. Ass'n v. Bowen*,
   834 F.2d 1037 (D.C. Cir. 1987) ..................................................................5, 6

*Anderson v. United States*,
   344 F.3d 1343 (Fed. Cir. 2003) ......................................................................2

*Animal Def. Council v. Hodel*,
   840 F.2d 1432 (9th Cir. 1988), *as amended at* 867 F.2d 1244 (9th Cir. 1989).......14

*Arizona v. Shalala*,
   121 F. Supp. 2d 40 (D.D.C. 2000) ..................................................................8

*Atl. Fish Spotters Ass'n v. Evans*,
   321 F.3d 220 (1st Cir. 2003).........................................................................15

*Bennett v. Spear*,
   520 U.S. 154 (1997).....................................................................................5

*Bunker Ltd. P'ship v. United States*,
   820 F.2d 308 (9th Cir. 1987) ..........................................................................5

*Cabell v. Markham*,
   148 F.2d 737 (2d Cir.), *aff'd*, 326 U.S. 404 (1945). ..................................17

*Camp v. Pitts*,
   411 U.S. 138 (1973).....................................................................................14

*CGI Fed. Inc. v. United States*,
   770 F.3d 1346 (Fed. Cir. 2015) .......................................................................2

*Citizens Alert Regarding Env't v. EPA*,
   102 F. App'x 167 (D.C. Cir. 2004).............................................................6, 7, 8

*City of L.A. v. Dep't of Commerce*,
   307 F.3d 859 (9th Cir. 2002) .........................................................................18

*City of Phila. v. Sessions*,
    309 F. Supp. 3d 271 (E.D. Pa. 2017) ........................................................7

*Crow Tribe of Indians v. Racicot*,
    87 F.3d 1039 (9th Cir. 1996) ..................................................................15

*Dalton v. Specter*,
    511 U.S. 462 (1994) ...........................................................................7, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .................................................................................15

*Dep't of the Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999) ...................................................................................4

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) .................................................................................11

*Geo-Med, LLC v. United States*,
    135 Fed. Cl. 742 (2017) ............................................................................2

*Headwaters, Inc. v. Bureau of Land Mgmt.*,
    893 F.2d 1012 (9th Cir. 1989) ..................................................................5

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .................................................................................11

*Karst Envtl. Educ. & Prot., Inc. v. EPA*,
    403 F. Supp. 2d 74 (D.D.C. 2005), *aff'd*, 475 F.3d 1291 (D.C. Cir. 2007) ..........7, 8

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .................................................................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................1, 2, 3

*Milk Train, Inc. v. Veneman*,
    310 F.3d 747 (D.C. Cir. 2002) ................................................................11

*Nat. Res. Def. Council v. Kempthorne*,
    506 F. Supp. 2d 322 (E.D. Cal. 2007) ....................................................14

*Nat'l Mining Ass'n v. Jackson*,
   768 F. Supp. 2d 34 (D.D.C. 2011) ..................................................................7

*Norton v. S. Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ..........................................................................................7, 10

*Oregon v. Legal Servs. Corp.*,
   552 F.3d 965 (9th Cir. 2009) ...........................................................................3

*Orion Tech., Inc. v. United States*,
   704 F.3d 1344 (Fed. Cir. 2013) .......................................................................2

*Perrin v. United States*,
   444 U.S. 37 (1979) ...........................................................................................15

*Pinnacle Armor, Inc. v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) ...........................................................14

*Planned Parenthood of Wis., Inc. v. Azar*,
   --- F. Supp. 3d. ----, No. 1:18-cv-01035 (TNM),
    2018 WL 3432718 (D.D.C. July 16, 2018) .....................................................6, 8

*Policy & Research, LLC v. HHS*,
   --- F. Supp. 3d. ----, No. 18-CV-00346, 2018 WL 2184449 (D.D.C. May 11,
   2018) ...............................................................................................................11

*Ranchers Cattlemen Action Fund United Stockgrowers of Am. v. U.S. Dep't of
   Agric.*,
   499 F.3d 1108 (9th Cir. 2007) .........................................................................14

*Rattlesnake Coal. v. EPA*,
   509 F.3d 1095 (9th Cir. 2007) ............................................................6, 8, 10, 11

*Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*,
   324 F.3d 726 (D.C. Cir. 2003) .........................................................................7

*Rex Serv. Corp. v. United States*,
   448 F.3d 1305 (Fed. Cir. 2006) .......................................................................2, 3

*SEC v. Capital Consultants, LLC*,
   397 F.3d 733 (9th Cir. 2005) ...........................................................................15

*State ex rel. Becerra v. Sessions*,
    284 F. Supp. 3d 1015 (N.D. Cal. 2018) ...................................................7

*Tanoh v. Dow Chem. Co.*,
    561 F.3d 945 (9th Cir. 2009) ................................................................4

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) .............................................................15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)..............................................................................2

*White v. Univ. of Cal.*,
    765 F.3d 1010 (9th Cir. 2014) ..............................................................5

**Statutes**

5 U.S.C. § 551 .............................................................................................6

5 U.S.C. § 704.............................................................................................5

5 U.S.C. § 706.............................................................................................4

Consolidated Appropriations Act,
    Pub. L. No. 115-141, 132 Stat. 348 (2018) .........................................12

H.R. Rep. 111-220 (July 22, 2009)............................................................20

**Rules**

Fed. R. Civ. P. 26......................................................................................14

Fed. R. Evid. 702 ................................................................................14, 15

**Other Authorities**

Help Page, *Merriam-Webster Online*, https://www.merriam-
    webster.com/help/explanatory-notes/dict-definitions...............................17

HHS Awards Overview, <u>Tracking Accountability in Government Grant Spending</u>,
    https://mschiavoni.github.io/TaggsAR2016/awards.html .......................22

Mathematica Policy Research, Identifying Programs that Impact Teen Pregnancy,
    Sexually Transmitted Infections, and Associated Sexual Risk Behaviors: Review
    Protocol (version 5.0) (TPP Evidence Review Protocol),
    https://tppevidencereview.aspe.hhs.gov/pdfs/TPPER_Review%20Protocol_v5.p
    df ...........................................................................................................20

"Program," Merriam Webster's Collegiate Dictionary (11th ed.),
    https://www.merriam-webster.com/dictionary/program ...................................16, 17

Programme | program, *Oxford English Dictionary Online*,
    http://www.oed.com/view/Entry/152225?result=1&rskey=a5qcpt& .....................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

The Court should dismiss Plaintiffs' claims or, in the alternative, grant Defendants summary judgment.  Plaintiffs have pleaded neither an injury in fact nor sought relief that would redress any injury they might have suffered, so they cannot meet their burden to establish Article III standing.  Plaintiffs also fail to show that their Administrative Procedure Act (APA) claims are justiciable.  Their attempt in their latest brief to rewrite their claims to meet the APA's final agency action requirement fails.  They also fail to rebut the presumption that the Teen Pregnancy Prevention Program (TPP Program) grant award process is committed by law to the discretion of the U.S. Department of Health and Human Services' (HHS).  Finally, the merits of Plaintiff's claims, which the Court need not address, fare no better.  Plaintiffs cannot bypass the rules governing APA review and the canons of statutory construction simply by filing a declaration by a former Planned Parenthood employee that attests to legal conclusions.[1]

## ARGUMENT

## I.      Plaintiffs Have Not Met Their Burden to Establish Article III Standing.

The allegations in Plaintiffs' Complaint for Declaratory and Injunctive Relief, ECF No. 1 (Complaint) do not establish standing because they do not plead either an injury in fact or that any injury Plaintiffs did suffer would be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs' briefs do nothing

---

[1]  This reply is "limited to issues raised in [Defendants'] motions to dismiss and for summary judgment" rather than being "intended to provide a sur-reply to Plaintiffs' Motion."  Order Granting Pls.' Unopposed Mot. Leave File Over Length Briefing & Proposed Briefing Schedule, ECF No. 18, at 4.  Thus, this brief does not address Plaintiffs' request for a preliminary injunction.  Nonetheless, Plaintiffs' reply in support of their preliminary injunction motion makes several misstatements of law that Defendants could address in a sur-reply if it would be helpful to the Court's resolution of that motion.

Reply in Support of Cross-Motion to
Dismiss or for Summary Judgment

to alter this conclusion.

### A. Plaintiffs Have Not Demonstrated an Injury in Fact.

Plaintiffs do not establish an injury in fact that is "concrete and particularized" and "actual or imminent" because they neither submitted proposed programs for funding under the 2018 FOAs nor identified programs they would propose were they to apply. *Lujan*, 504 U.S. at 560 (internal citations omitted). *See Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006). Plaintiffs concede that their injury in fact can be assessed using the same rubric that applies in the analogous context of bid protests to government contract solicitations. Pls.' Reply Supp. Mot. Prelim. or Permanent Inj. & Summ. J. & Opp'n Defs.' Mot. Dismiss or Mot. Summ. J., ECF No. 29 (Plaintiffs' Opposition) at 2-3. Under that rubric, only "an actual or prospective bidder" with "a direct economic interest" has standing to challenge the bid process. *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). These interrelated requirements ensure that a plaintiff has standing, rather than having only an abstract interest in proper government administration. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982). *See also Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) (Article III standing requirements applied in Court of Federal Claims).

Plaintiffs do not even identify a purported direct economic interest, much less meet their burden to establish one.[2] *See* Pls.' Opp'n at 2-3. To evaluate an actual bidder's

---

[2] Regarding their injury in fact, Plaintiffs address only the "actual or prospective bidder" prong, arguing that they are prospective bidders because they filed suit before TPP Program grant applications were due. *See* Opp'n at 2-3. Although Plaintiffs' failure to address the direct economic interest prong is dispositive, Plaintiffs' claim to prospective bidder status also fails. A prospective bidder must "exercise reasonable diligence in pursuing its" legal remedies. *Geo-Med, LLC v. United States*, 135 Fed. Cl. 742, 748 (2017). For example, a prospective bidder should "immediately file[] for relief in court." *CGI Fed. Inc. v. United States*, 770 F.3d 1346, 1351 (Fed. Cir. 2015).

1   economic interest, courts need look no further than their bid.  Because there is no

2   submission to evaluate for prospective bidders, "[t]o prove a direct economic interest[,] . . .

3   a putative prospective bidder . . . is required to establish that it had a 'substantial chance' of

4   receiving the contract."  *Rex Serv. Corp.*, 448 F.3d at 1308 (citation omitted).  As noted in

5   Defendant's opening brief, "Plaintiffs' Complaint does not identify for what proposed

6   programs Plaintiffs would seek TPP Program funds."  Notice Mot. & Mem. Supp. Defs.'

7   Cross-Mot. Dismiss or, in Alternative, for Summ. J. & Opp'n Pls.' Mot. Prelim. Inj. &

8   Summ. J., ECF No. 19 (Defendants' Motion) at 11.  *See also* Compl. ¶¶ 93-99.  Without

9   either submitting a proposal for TPP Program funding or alleging the nature of the

10  programs Plaintiffs would have proposed, Plaintiffs have not shown that they have any

11  chance of receiving such funding, much less a substantial one.  *See Rex. Serv. Corp.*, 448

12  F.3d at 1308.  Plaintiffs have therefore failed to meet their burden to show an injury in fact

13  sufficient to confer standing.  *See Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir.

14  2009).

## B. Plaintiffs Have Not Established Redressability.

15

16          Plaintiffs also lack standing because they have not established that the relief they

17  seek would redress their purported injuries.  *See Lujan*, 504 U.S. at 560-61.  The Complaint

18  seeks only to declare the 2018 FOAs invalid and enjoin HHS from reviewing applications

19  or disbursing funds pursuant to the FOAs.  *See* Compl. at 37 (prayer for relief paragraphs 1-

20  3).  Awarding this relief would result in the 2018 TPP Program appropriation money sitting

21  in limbo until after the end of the fiscal year, at which point HHS would lose control of the

22  funds.  Even if HHS kept control of the funds, none of the relief Plaintiffs seek would

23  ─────────────────────

24  Plaintiffs waited forty-four days after the issuance of the 2018 FOAs to file this lawsuit,

    after letters of intent were due and only eight days before final applications were due.
25
    *See* Compl. (filed June 21, 2018); 2018 Tier 1 FOA at 1, 80, AR000032, AR000111;
26
    2018 Tier 2 FOA at 1, 73, AR000127, AR000199.  This lack of diligence alone is an
27
    additional independent basis for holding that Plaintiffs have failed to establish an injury
28
    in fact.

1   require HHS to disburse the funds through new FOAs.  *See generally id.* at 37-38;

2   [Proposed] Order Granting Mot. Prelim. or Permanent Inj. & Summ. J., ECF No. 16-1

3   (Plaintiffs' Proposed Order), at 2.  This failure to request affirmative relief is fatal to

4   Plaintiffs showing redressability.

5          Plaintiffs' counter-arguments fail because they all require the Court to imagine that

6   Plaintiffs had sought interim or permanent relief that is wholly absent from their filings.

7   Ultimately, Plaintiffs are "masters of their complaint," *Tanoh v. Dow Chem. Co.*, 561 F.3d

8   945, 953 (9th Cir. 2009), and the consequences of their failure to request relief that could

9   provide redress falls on them.

10         Plaintiffs initially propose two scenarios under which HHS might not lose control of

11  the 2018 TPP Program appropriation at the end of the fiscal year.  Plaintiffs assert that HHS

12  could engage in creative accounting to preserve its control over the funds, Pls.' Opp'n at 3

13  & n.1, but this ignores that they have never sought to compel HHS to do so.  Indeed,

14  Plaintiffs have not even articulated any legal basis for the Court to issue such an order, *see*

15  Pls.' Opp'n at 3, and sovereign immunity bars any form of relief against the federal

16  government that is not explicitly permitted by Congress, *Dep't of the Army v. Blue Fox,*

17  *Inc.*, 525 U.S. 255, 263 (1999).  Alternatively, Plaintiffs assert that they "have requested

18  that the Court enjoin and preserve awards for fiscal year 2018."  Pls.' Opp'n at 3-4.  In fact,

19  recognizing limited relief available under the APA, *see* 5 U.S.C. § 706(2), Plaintiffs do not

20  ask for affirmative preservation of appropriated funds.  *See* Compl. at 37-38; Pls.' Proposed

21  Order at 2.  Instead, they ask only that the Court enjoin HHS from disbursing them under

22  the 2018 FOAs.  Compl. at 37-38; Pls.' Proposed Order at 2.  That injunction would be

23  entirely consistent with the funds reverting to the Treasury.

24         Plaintiffs next argue that "vacatur would alleviate Plaintiffs' competitive injury."

25  Pls.' Opp'n at 3.  Their competitive injury, however, would be redressed only by HHS

26  issuing TPP Program FOAs without the features Plaintiffs challenge as unfavorable to

27  them.  Plaintiffs never request that affirmative relief.  They seek only prohibitory relief.  *See*

28  Compl. at 37-38.  In addition, there is no reason to believe that HHS could draft a new

Reply in Support of Cross-Motion to
Dismiss or for Summary Judgment          4

1    FOA, publish it, provide potential applicants time to submit applications, review those

2    applications, and issue awards by September 30.  The application period alone typically

3    runs longer than that.  Yet, if all the foregoing events do not occur in the necessary

4    timeframe—and Plaintiffs have asked for none of them to occur at all—the Court's ultimate

5    decision would not redress Plaintiffs' purported injury.

6        Finally, Plaintiffs argue that the Court should consider their un-redressable claims

7    because "[t]o find otherwise would allow an agency to avoid judicial review" by starting

8    competition for appropriated funds "too close to the end of the fiscal year."  Pls.' Opp'n at

9    4.  However, Plaintiffs' own failure to request appropriate interim relief does not make

10   HHS's actions reviewable under the "capable of repetition, yet evading review" exception

11   to normal standing requirements.  *See Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d

12   1012, 1016 (9th Cir. 1989); *Bunker Ltd. P'ship v. United States*, 820 F.2d 308, 311 (9th Cir.

13   1987).  A plaintiff who sought the proper interim and permanent relief could have a

14   redressable injury regardless of the end of the fiscal year; Plaintiffs have just failed to seek

15   the necessary relief here.

16   **II.    <u>Plaintiffs' Claims Are Not Justiciable Under the APA.</u>**

17       The APA permits judicial review only of final agency actions not committed to

18   agency discretion by law.  5 U.S.C. § 704.  *See also White v. Univ. of Cal.*, 765 F.3d 1010,

19   1024 (9th Cir. 2014).  Plaintiffs' claims fail both of those criteria: they do not challenge a

20   final agency action, and Plaintiffs challenge aspects of HHS's administration of the TPP

21   Program that are committed to the agency's discretion by law.

22       **A. The Challenged Aspects of the 2018 FOAs Are Not Final Agency Actions.**

23       An agency action is final, and thus potentially subject to judicial review, only when it

24   "mark[s] the 'consummation' of the agency's decisionmaking process" and the action is

25   "one by which 'rights or obligations have been determined,' or from which 'legal

26   consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal citations

27   omitted).  The 2018 FOAs represent only the initiation of the process for awarding TPP

28   Program grants and do not entitle applicants to grant funds.  *See Am. Hosp. Ass'n v. Bowen*,

834 F.2d 1037, 1053 (D.C. Cir. 1987) (stating that HHS's request for proposals "binds neither the agency nor the [potential bidders] to whom it is sent").  As the District Court for the District of Columbia recently held in a challenge to HHS FOAs for a different grant program, "intermediate criteria by which applications will be evaluated, as described in an announcement of available grant funds," are not "the consummation of the agency's decisionmaking process, nor a decision by which right or obligations have been determined or from which legal consequence will flow."  *Planned Parenthood of Wis., Inc. v. Azar*, --- F. Supp. 3d.----, No. 1:18-cv-01035 (TNM), 2018 WL 3432718, at *6 (D.D.C. July 16, 2018) (internal citations and quotation marks omitted), *appeal docketed*, Nos. 18-5218, 18-5219 (D.C. Cir. July 7, 2018).  Thus, they are not final agency actions subject to judicial review.  Judicial review is appropriate (if at all) only once HHS "completes its review of the grant application[s] and decides to disburse the appropriated funds."  *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007).  That will occur when the Director of the Office of Adolescent Health ("OAH Director") makes award decisions.  2018 Tier 1 FOA at 63, AR000094; *see also* 2018 Tier 2 FOA at 57, AR000183.  Plaintiffs' contentions to the contrary are without merit.

       1.  The FOAs are Not the Consummation of HHS's Grant Award Process.

Plaintiffs contend that "the new criteria in the 2018 FOAs mark the 'consummation' of a lengthy agency process to abandon the statutory restrictions set out in the 2018 CAA." Pls.' Opp'n at 5.  This is a creative, but legally baseless, reframing of the process at issue here.  The process challenged is awarding grants, which is not final until awards are made.

Initially, Plaintiffs' argument rests on a caricature of the process through which HHS issued the 2018 FOAs because Plaintiffs do not identify an "agency action" within the meaning of the term in the APA.  The APA provides that a "grant of money," in whole or in part, is a form of "relief" that an agency can provide.  5 U.S.C. § 551(11).  "Relief," in turn, is one kind of "agency action."  *Id.* § 551(13).  Thus, until the agency has made grant awards, there has not yet been a consummation of its decisionmaking process regarding an agency action.  *See Rattlesnake Coal.*, 509 F.3d at 1104; *Citizens Alert Regarding Env't v.*

1   *EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004); *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 403

2   F. Supp. 2d 74, 81 (D.D.C. 2005), *aff'd*, 475 F.3d 1291 (D.C. Cir. 2007).  HHS's alleged

3   effort to avoid its statutory obligations would not be an "agency action" within the meaning

4   of the term under the APA, so it cannot be a final agency action.  *See Norton v. S. Utah*

5   *Wilderness Alliance*, 542 U.S. 55, 62-63 (2004) (holding that APA challenges may be

6   properly made only to "a discrete listed action" in 5 U.S.C. § 551(13)).

7          Moreover, the only arguments Plaintiffs muster in support of the 2018 FOAs being

8   the consummation of HHS's alleged plot to misuse appropriated funds are that a great deal

9   of effort went into the FOAs and that "[t]here is no evidence that HHS intends to deviate

10  from the requirements" in them.  Pls.' Op. at 5-6.  But labor and complexity are not

11  equivalent to finality.  *See Dalton v. Specter*, 511 U.S. 462, 464, 469-70 (1994) (finding

12  recommendations regarding base closures that were "the end result of an elaborate selection

13  process" did not constitute final agency action).  Also, "a statement of the agency's

14  intention . . . do[es] not constitute a final agency action within the meaning of the APA"

15  because it does not "impose[] an obligation, den[y] a right, or fix[] some legal relationship."

16  *See Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d

17  726, 731 (D.C. Cir. 2003) (citation omitted).  The absence of any affirmative statement that

18  HHS intends to disregard the FOAs is not enough to make them final.

19          2.   No Legal Consequences Flow from the FOAs.

20         Plaintiffs next contend that the challenged aspects of the 2018 FOAs are eligibility

21  criteria for TPP Program grants, so have direct legal consequences.  Pls.' Opp'n at 6-10.  If

22  Plaintiffs had in fact challenged grant eligibility criteria, the cases they rely upon might be

23  relevant,[3] and Plaintiffs might be able to distinguish this case from the numerous ones

24  _____

25  [3]  *See State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031-32 (N.D. Cal. 2018)

26  (additional submission requirement for application for mandatory grant); *City of Phila.*

27  *v. Sessions*, 309 F. Supp. 3d 271, 280 (E.D. Pa. 2017) (same); *Nat'l Mining Ass'n v.*

28  *Jackson*, 768 F. Supp. 2d 34, 42 (D.D.C. 2011) (issuance of new guidance used "to

holding that, so long as an agency still has discretion to exercise, there is no final agency action until a grant is awarded.[4]  *See id.* at 7-9 & nn. 6, 7.  Plaintiffs' contention collapses because the aspects of the 2018 FOAs Plaintiffs challenge are the factors HHS considers in making grant awards, not requirements for submitting a compliant application.  The only way Plaintiffs can argue to the contrary is by blatantly mischaracterizing their claims.

Both the Complaint and the plain language of the 2018 FOAs clearly rebut Plaintiffs' newfound legal theory.  Even a cursory examination of these documents discredits Plaintiffs' central assertion that their "argument is not that the 2018 FOAs alter the criteria to be considered in the intermediate phase of the grant application process" but that "HHS has implemented new eligibility requirements that render Plaintiffs unable to submit a compliant application at all."  Pls.' Opp'n at 8.

Initially, the Complaint has no allegations that the eligibility criteria under the 2018 FOAs were unlawful or otherwise improper.  Throughout that pleading, Plaintiffs allege only that they would be harmed by the way TPP Program applications will be scored.  Regarding the 2018 Tier 1 FOA, they allege that they are at a "severe disadvantage" because the scoring criteria applied by the independent review panels purportedly favor sexual risk avoidance (SRA) programs.  Compl. ¶ 95.  *See also id.* 94, 96, 105, 107, 108, 116, 124.  They likewise allege that the 2018 Tier 2 FOA "disadvantag[es] applicants committed to offering evidence-based programming" by favoring SRA.  *Id.* ¶ 107.  These allegations disprove Plaintiffs' current characterization of their claims as challenging the eligibility criteria because <u>only eligible applications are scored</u> under the 2018 FOAs.  *See*

---

screen permit applications"); *Arizona v. Shalala*, 121 F. Supp. 2d 40 (D.D.C. 2000) (change to submission requirements for application for block grant).

[4] *See Rattlesnake Coal.*, 509 F.3d at 1104 (no final agency when grant funds were not yet obligated); *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004) (same); *Planned Parenthood of Wis., Inc.*, 2018 WL 3432718, at *6-9 (same); *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 403 F. Supp. 2d 74, 81 (D.D.C. 2005) (same), *aff'd*, 475 F.3d 1291 (D.C. Cir. 2007).

2018 Tier 1 FOA at 58, AR000089 ("Federal staff and an independent review panel will assess all eligible applications according to the following criteria. Disqualified applications will not be reviewed against these criteria."); 2018 Tier 2 FOA at 53, AR000179 (same). *See also* 2018 Tier 1 FOA at 29-30, AR000060-61; 2018 Tier 2 FOA at 26-27, AR000152-53. Further, the two times in the Complaint Plaintiffs use any variation of the words "eligible" or "ineligible" in reference to the 2018 FOAs are both allegations that applicants like Plaintiffs would be functionally ineligible to <u>receive points when independent review panels score applications</u>, not that they are unable to submit compliant applications. Compl. ¶¶ 82, 95. The Complaint is devoid of a single allegation that Plaintiffs' TPP Program grant applications (had they submitted any) would be ineligible for consideration on their merits.

The plain language of the 2018 FOAs also refutes Plaintiffs' freshly-minted legal theory. If an applicant is the appropriate type of entity (*e.g.*, a hospital, non-profit, etc.), it can comply with the eligibility requirements and submit a compliant application, regardless of the content of its proposed program. Accordingly, the challenged aspects of the 2018 FOAs have no direct legal consequences because they do not prevent eligible entities from submitting facially compliant applications that HHS will consider on the merits.

To the contrary, under the 2018 Tier 1 FOA, every application by an appropriate type of entity will be considered on its merits if it "appears to have demonstrated" that it serves a population in need, "clearly identifie[s]" either SMARTool or TAC as the program it will be measured against, and does not run afoul of the procedural requirements for submission (*e.g.*, timeliness). 2018 Tier 1 FOA at 28-31, AR000059-062. The identification requirement does not require that the proposed program actually replicate either SMARTool or TAC. Indeed, the FOA specifically provides that, "[p]rojects that are on a continuum between the two teen pregnancy prevention programs," should nonetheless "select either of the two programs" and describe the extent to which they replicate each element. *Id.* at 14, AR000045. This identification becomes relevant only when independent review panels award points based on the how well the proposed programs

1    replicate the program they selected to be measured against. *See id.* at 59, AR000090

2    (awarding points for this factor). Regardless of the score the proposed program receives at

3    that stage, the application is forwarded to the OAH Director for a final decision. *Id.* at 63,

4    AR000094.

5    The 2018 Tier 2 FOA similarly does not impose eligibility requirements that would

6    prevent Plaintiffs from submitting an application that would be reviewed on its merits. For

7    Tier 2 grants, eligible entities must comply with procedural requirements as well as

8    submitting an application that, on its face, "appears to have demonstrated that the

9    program/strategy is implementation-ready and addresses protective factors **and/or** selected

10   elements of either the SMARTool or" TAC.[5]  2018 Tier 2 FOA at 26-28, AR000152-54.

11   "How well the proposal selected for implementation address[es] one or more of the

12   protective factors" and the extent to which "the proposed project and approach [are] fully

13   aligned with the priorities and expectations of th[e] FOA" affect only how many points

14   independent review panels should assign at the intermediate stage of review. *Id.* at 54,

15   AR000180. Again, all eligible applications are forwarded to the OAH Director for a final

16   decision. *Id.* at 56-57, AR000182-83.

17   In sum, Plaintiffs' challenge is only to the factors considered by independent review

18   panels in assigning points to proposed programs, *see* Compl. ¶¶ 94-99, 107, and the case

19   law shows that announcing those factors is not a final agency action, *see Rattlesnake Coal.*,

20   509 F.3d at 1104. The review panels' scores serve only as recommendations to the OAH

21   Director, who makes the final decisions.[6]  2018 Tier 1 FOA at 63, AR00094; 2018 Tier 2

22

23   _____

     [5] Although the implementation-ready requirement is mentioned in Plaintiffs'

24   Opposition, Pls.' Opp'n at 7-8, it is nowhere in their Complaint, nor do Plaintiffs allege

25   that this requirement is unlawful or otherwise improper, *see* Compl. ¶¶ 94-99, 107.

26

27   [6] Plaintiffs argue in a footnote that the Court should disregard the fact that the OAH

28   Director alone can obligate TPP Program grant funds because the Director must

     _____

FOA at 56-57, AR000182-83.  The scoring—much less the guidance on the scoring—thus has no direct legal consequences.  *See Dalton*, 511 U.S. at 470-71; *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).  Plaintiffs' attempt to distinguish the numerous cases holding as much in the grant award context, including controlling Ninth Circuit precedent, is therefore unavailing.

### B. Plaintiffs Have Not Rebutted the Presumption that HHS's Grant Awards Are Committed to Agency Discretion.

Agencies' exercise of discretion in awarding grants—whether funded by lump-sum or program-specific appropriations—are presumptively unreviewable.  *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Policy & Research, LLC v. HHS*, --- F. Supp. 3d ----, No. 18-CV-00346, 2018 WL 2184449, at *7 (D.D.C. May 11, 2018), *appeal docketed*, No. 18-5190 (D.C. Cir. June 21, 2018).  This doctrine exists because awarding grants "'involves a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise,'" leaving "'no meaningful standard against which to judge the agency's exercise of discretion.'"  *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 831 (1985)).  Overcoming this presumption requires Plaintiffs to identify substantive limitations inherent in the statutory language against which to judge the <u>aspects of the agency action being challenged</u>, not just some aspect of the grant being administered.  *See Milk Train, Inc.*, 310 F.3d at 751-52 (holding

---

"consider both the [2018 FOA] priorities themselves and the application score generated by the [independent review] panel that likewise was required to award points based on the adherence these priorities."  Pls.' Opp'n at 9 n. 7.  There is no textual basis for limiting the OAH Director's discretion in this way, but Plaintiffs' footnote misses the point regardless.  Neither the existence of the priorities nor the independent review panels' scoring based in part on those priorities has a legal effect.  The Director obligating grant funds has such an effect and is thus the point at which there is a final agency action potentially subject to judicial review.  *See Rattlesnake Coal.*, 509 F.3d at 1104.

one aspect of an agency's grant award process was committed to agency discretion and permitting another to be considered on the merits).  *See also Alan Guttmacher Inst. v. McPherson*, 597 F. Supp. 1530, 1536 (S.D.N.Y. 1984) (holding funding for a specific project committed to agency discretion even though the relevant statutory provisions might "permit a court to decide whether a project was particularly inappropriate for funding" and "weed[] out" such projects), *aff'd*, 805 F.2d 1088 (2d Cir. 1986).  Because they do not identify a statutory, judicially manageable standard to apply to the challenged aspects of the 2018 FOAs, Plaintiffs cannot overcome the presumption of unreviewability.

Plaintiffs assert that the Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733 (2018) (2018 CAA) provides the requisite standard for the Court to apply.[7]  Pls.' Opp'n at 12.  Notably lacking, however, is any identification of specific text in the TPP Program appropriation cabining HHS's discretion to implement the challenged aspects of the 2018 FOAs.  *See generally id.* at 10-13.  Without any textual grounding for their argument, Plaintiffs have come up empty in rebutting the presumption.

## III.    Defendants Are Entitled to Summary Judgment on the Merits of Plaintiffs' Challenges to the Tier 1 and Tier 2 Funding Opportunity Announcements.

HHS acted lawfully and reasonably in implementing new approaches to deciding which TPP Program grants to award.  As set forth in Defendants' Motion, the 2018 Tier 1 FOA accords with the Tier 1 appropriation, neither FOA improperly shifts funds to SRA-only programs, and HHS has shown an ample basis in the administrative record

---

[7]  Plaintiffs attempt to bolster this assertion by citing to cases where courts have found that Congress adopts an outside interpretation of a statutory term when it expresses approval of that interpretation in the legislative history of statute re-enacting the earlier one.  Pls.' Opp'n at 12.  Those cases are inapposite, however, because Plaintiffs do not identify any legislative history where Congress approved of HHS's past interpretations of language in the 2018 CAA's TPP Program appropriation.  Indeed, it is unclear that past FOAs even constitute interpretations of the statutory language so much as different implementations of it.

1   for its new approaches.  *See* Defs.' Mot. at 19-33.  Plaintiffs' responses to these points

2   are unpersuasive and certainly insufficient to rebut the deference afforded to HHS's

3   interpretation of Congress's language in the 2018 TPP Program appropriation.

4          Before turning to the specific responses in Plaintiffs' Opposition, however,

5   Defendants address an overarching problem with all those responses—their reliance on

6   the Declaration of Leslie M. Kantor, PhD, MPH, ECF No. 31 (Kantor Declaration).  *See*

7   Pls.' Opp'n at 14-25 (citing the Kantor Declaration thirty times).  Notably, although

8   Plaintiffs submitted five declarations in support of their opening brief, the Kantor

9   Declaration was not among them.  *See generally* Notice Mot. & Mem. P. & A. Supp.

10  Mot. Prelim. or Permanent Inj. & Summ. J., ECF No. 16.  In tacit recognition of the

11  inadequacy of those five declarations and Plaintiffs' legal arguments, Plaintiffs

12  procured the declaration of Dr. Kantor, an academic who served as Vice President of

13  Education for the Planned Parenthood Federation of America until a few months ago.

14  Kantor Decl. ¶¶ 1-2.  In the Declaration, Kantor proclaims the "settled meanings within

15  the [relevant] fields" of "the terms used by Congress in funding the TPP Program" and

16  that "the 2018 FOAs do not adhere to those meanings."  *Id.* ¶ 8.  She goes on to

17  interpret the "2018 FOAs [to] require all grantees . . . to deliver untested abstinence-

18  only content," then questions whether this content interferes with the effectiveness of

19  funded programs.  *Id.*  Not only are these "opinions" on the meaning of both statutory

20  text and the language in the 2018 FOA poorly disguised legal conclusions, but the

21  Kantor Declaration is not properly before the Court.  It is not the rare document outside

22  the administrative record that courts will consider in APA review cases, and the

23  purportedly expert opinions contained in the Declaration would not be admissible

24  evidence in any federal case.

25         Any substantive consideration of the Kantor Declaration is improper first because

26  courts decide APA challenges exclusively on the administrative record, subject only to

27  very narrow exceptions.  "It is an established rule that 'the focal point for judicial

28  review [of APA claims] should be the administrative record already in existence, not

1   some new record made initially in the reviewing court.'"  *Id.* (quoting *Camp v. Pitts*,

2   411 U.S. 138, 142 (1973)).  Although there are a few recognized exceptions to this rule,

3   they are "narrow," and the burden to invoke them is high.  *Ranchers Cattlemen Action*

4   *Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1117 (9th Cir.

5   2007).  Plaintiffs have not even argued a "need to go outside the administrative record,"

6   much less met their burden to prove that need to the Court.  *Animal Def. Council v.*

7   *Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988), *as amended at* 867 F.2d 1244 (9th Cir.

8   1989); *see also Nat. Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322, 345 (E.D.

9   Cal. 2007).  And, given that they do not even identify a putatively applicable exception

10  that would justify the Court considering the Kantor Declaration, Plaintiffs have likewise

11  not met their "burden to establish that the extra-record [d]ocument[] qualif[ies] for" one

12  of the recognized exceptions.  *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d

13  1226, 1243 (E.D. Cal. 2013).  Therefore, the Kantor Declaration is improper, and

14  Plaintiffs' arguments based on it fail on their face.

15      The Kantor Declaration is also inadmissible under the Federal Rules of Evidence,

16  so could not be used even in a proceeding not limited to an administrative record.[8]  The

17  Kantor Declaration purports to "provide [Kantor's] opinions as an expert in" various

18  fields.  *Id.* ¶ 8.  Under Federal Rule of Evidence 702(a), expert opinion is only

19  admissible if it "help[s] the trier of fact to understand the evidence or to determine a

20  fact in issue."  The Kantor Declaration, however, does not relate to either evidence or a

21  factual dispute.  Instead, it opines directly on the legal questions of the meaning of

22  statutory terms, Congress's intent when it enacted the TPP Program appropriations, and

23  the meanings and legal effects of 2018 FOAs' provisions.  Kantor Decl. ¶¶ 8, 14, 16-17,

---

[8] The Kantor Declaration additionally does not comply with the Federal Rules of Civil Procedure in various ways.  For instance, it does not provide a "list of all other cases in which, during the previous 4 years, [she] testified as an expert at trial or by deposition" or, more importantly, all "the facts or data considered by [Dr. Kantor] in forming" her opinions."  Fed. R. Civ. P. 26(a)(2)(B)(ii), (B)(v).

1   26-27, 29, 31-32, 34-41.  "Experts may interpret and analyze factual evidence but may

2   not testify about the law."  *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 749 (9th

3   Cir. 2005).  *See also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.

4   1996).  Moreover, the Kantor Declaration's unsupported assertions and outcome-driven

5   cherry-picking of sources do not constitute "reliable principles and methods" under

6   Federal Rule of Evidence 702(c), so would not survive a motion to exclude under the

7   Court's gatekeeping function described in *Daubert v. Merrell Dow Pharmaceuticals,*

8   *Inc.*, 509 U.S. 579 (1993).

9        Finally, even if somehow admissible, there is no basis in law for giving any

10  weight to the substance of the Kantor Declaration, and its proffered interpretations of

11  the TPP Program appropriation statute. The Kantor Declaration purports to assign

12  "settled meanings" in the social science literature to "the terms used by Congress in

13  funding the TPP Program."  Kantor Decl. ¶ 8.  *See also id.* ¶¶ 14, 16.  But presuming

14  that Congress used terms of art without telling anyone is without any basis in law.

15  There is no canon of construction affording deference to interested professors' *post hoc*

16  interpretations of congressional meaning.  Instead, the "fundamental canon of statutory

17  construction is that, unless otherwise defined, words will be interpreted as taking their

18  ordinary, contemporary, common meaning."  *Perrin v. United States*, 444 U.S. 37, 42

19  (1979).  *See also United States v. McIntosh*, 833 F.3d 1163, 1175-76 (9th Cir. 2016)

20  (same and using dictionary definitions to establish ordinary meaning).  "This

21  interpretative modality is particularly apt when the meaning of an annual appropriations

22  bill hangs in the balance."  *Atl. Fish Spotters Ass'n v. Evans*, 321 F.3d 220, 224 (1st Cir.

23  2003).  Indeed, it would be impossible for Congress to have intended to use the terms in

24  the TPP Program appropriation as the terms are defined in the Kantor Declaration

25  because Kantor cobbled those definitions together by paraphrasing specific sources of

26  her own choosing, which evidences not only her implicit biases but also her lack of a

27

28

1   sound research methodology.[9]  *See* Kantor Decl. ¶ 16(a)-(e).  For that reason, the Kantor

2   Declaration's arguments about the meaning of statutory language merit no

3   consideration.

**A. The 2018 Tier 1 FOA Properly Funds Replication of Programs Proven**
**Effective through Rigorous Evaluation, as Congress Required.**

6   Pursuant to the 2018 TPP Program appropriation, the 2018 Tier 1 FOA

7   establishes a process that directs Tier 1 grant funds to (1) replicating (2) programs

8   (3) proven effective through rigorous evaluation.   Plaintiffs contest each of these

9   statutory requirements, but their objections lack merit.

10   1.  SMARTool and TAC Are "Programs."

11   HHS interprets the term "programs" in the TPP Program appropriation statute in

12   accordance with its ordinary meaning, which encompasses programs like SMARTool

13   and TAC.  Plaintiffs object to this interpretation on the grounds that (a) the particular

14   definition quoted in Defendants' Cross-Motion is the third listed definition, (b) the

15   definitions contained within the documentation for those programs use the term

16   "program" differently, and (c) the definition crafted by Dr. Kantor better fits with

17   Congressional intent.  These objections are readily disposed of.

18   First, Defendants used the most apt dictionary definition of "program" in their

19   opening brief to explicate the ordinary understanding of that term.  It would have been

20   nonsensical to define a "program" for preventing teen pregnancy in the sense of "a

21   public notice," a printed program for a performance, or a television or radio program,

22   the senses of the term defined before the one used by Defendants.  "Program," Merriam

23   Webster's Collegiate Dictionary (11th ed.), https://www.merriam-

---

[9]  This bias is even more evident in Kantor's interpretation of what the 2018 FOAs really
mean (despite what the documents say).  Kantor Decl. ¶¶ 29-41.  Her claims on that
front do not even purport to be grounded in the academic literature and rely on nothing
more than her own *ipse dixit*.  *See, e.g.,̦ id.* ¶ 32 ("In my opinion, these 'public health
priorities' mean that *all* grantees will be required to deliver abstinence-only messages.").

webster.com/dictionary/program (last visited Aug. 8, 2018). Also, the publisher of that dictionary explains that the dictionary does not "evaluate senses or set up a hierarchy of importance among them" by placing definitions in a particular order. Help Page, *Merriam-Webster Online*, https://www.merriam-webster.com/help/explanatory-notes/dict-definitions (last visited Aug. 8, 2018). Further, the definition quoted in Defendants' Motion is representative of definitions of the relevant sense of "program" in other well-recognized dictionaries. *See, e.g.*, programme | program, *Oxford English Dictionary Online,* http://www.oed.com/view/Entry/152225?result=1&rskey=a5qcpt& (last visited Aug. 8, 2018) ("More generally," a "program" is "a plan or scheme of any intended proceedings (whether in writing or not); an outline or abstract of something to be done."). These meanings are straightforward and appropriate. Plaintiffs' insistence that statutory terms must be interpreted in accordance with the first definition listed in a dictionary is lexicographic snobbery under which the TPP Program appropriation language would devolve into nonsense. As Learned Hand admonished, courts should not "make a fortress out of the dictionary . . . ." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404 (1945).

Second, as explained in Defendants' Motion, there is no reason to equate Congress's use of the word "program" in the TPP Program appropriation and private parties' use of the word in the documentation for the SMARTool or TAC programs. Defs.' Mot. at 23. Indeed, doing so would be contrary to HHS's interpretation of the term since the inception of the TPP Program. *See id.* (showing that the 2010 and 2015 Tier 1 FOAs are incompatible with the use of the terms in that documentation). Although Plaintiffs' Opposition reiterates their assertion that the Court should apply the meanings across contexts, Plaintiffs still have not provided any persuasive justification for letting private parties define the meaning of congressional text. Pls.' Opp'n at 15-16.

Third, Plaintiffs turn again to the Kantor Declaration to push the Court to adopt the definition of "program" included in the Declaration, arguing that it is a term of art in

1    the field and therefore better accords with the purpose of the TPP Program

2    appropriation.  *Id.* at 15.  Initially, this objection should be disregarded due to the

3    numerous problems with relying on the Kantor Declaration.  *See* § III, *supra*.  Further,

4    the Kantor Declaration's conception of a "program" continues to encompass a

5    mandatory curriculum.  Kantor Decl. ¶ 16(a).  *See also* Pls.' Opp'n at 14 n.10 ("Instead,

6    Plaintiffs' [sic] assert that a program must include a curriculum . . . .").  Again, this is

7    contrary to the broader understanding of "program" that HHS has consistently applied

8    since 2010.  *See* Defs.' Ex. A (2010 Tier 1 FOA) at 5 (providing Tier 1 grants to fund

9    replication of "program models" that were either "curriculum-based" or used "a broad

10   range of approaches").  Finally, Plaintiffs' belief that their definition of "program" is

11   superior does not render HHS's interpretation arbitrary or capricious.  *See City of L.A.*

12   *v. Dep't of Commerce*, 307 F.3d 859, 871-72 (9th Cir. 2002).

13            2.   The 2018 Tier 1 FOA Funds "Replication" of Either the SMARTool or

14                 TAC Program.

15            Under the 2018 Tier 1 FOA, applicants must describe how they replicate the

16   specified key elements of either the SMARTool or TAC program, and applications

17   receive points for how faithfully the proposed program replicates those elements.  2018

18   Tier 1 FOA at 12-13, 59, AR000043-44.  Plaintiffs make two arguments that the 2018

19   Tier 1 FOA nonetheless does not provide grants to "replicate" programs.  Pls.' Opp'n at

20   16-18.

21            Plaintiffs' first argument is a rehash of its earlier contention that "programs" must

22   include specific curricula.  *Compare* Pls.' Opp'n at 14-15 & n.10 (making this claim

23   regarding the meaning of "program") *with id.* at 16-17 (same for the meaning of

24   "replicate").  From that faulty premise, Plaintiffs reason that the 2018 Tier 1 FOA does

25   not provide for replication of programs because new curricula could comply with the

26   list of key elements of the SMARTool or TAC programs.  *Id.*  Because the meaning of

27   "program" is broader than Plaintiffs accept, the premise of this argument fails.  *See*

28   Defs.' Mot. at 23-25, § III.A.1, *supra*.

1    Plaintiffs' second argument is that the inclusion of the public health priorities in

2  the 2018 Tier 1 FOA means that applicants will be forced to adapt programs to an

3  extent that prevents the new programs from being replications.  Pls.' Opp'n at 17-18.

4  But that is an overreach because it disregards the possibility that applicants can select

5  existing curricula that already address the public health priorities and replicate the key

6  elements of either the SMARTool or TAC program.  Indeed, that seems like most

7  rational approach for a prospective applicant to take.  Regardless of likelihoods, the

8  mere possibility of existent programs that incorporate HHS's priorities (and, thus, need

9  no adaptation) fatally undercuts Plaintiffs' argument that programs cannot be replicated

10  because they must be adapted to account for the public health priorities.

11    Moreover, even if adaptation were necessary to address the public health

12  priorities, Plaintiffs do not make a principled distinction between the 2018 Tier 1 FOA

13  and past Tier 1 FOAs, which they concede were lawful.  Plaintiffs attempt to draw this

14  distinction by wrongly claiming that past FOAs permitted only "minor adaptations."  *Id.*

15  at 17.  However, as explained in Defendants' Motion, "both earlier FOAs for Tier 1

16  grants allowed specific substantive changes to replicated programs," not only changes

17  that HHS considered "minor adaptations."  Defs.' Mot. at 22.  Permissible substantive

18  changes included the addition of entirely new program components that did "not

19  significantly alter the core components of the underlying program," 2010 Tier 1 FOA at

20  7-8, and changes in the program setting and population served by the original program

21  if the developer indicated those changes were appropriate, 2015 Tier 1B FOA at 22-23.

22  The remaining basis for Plaintiffs' distinction is the Kantor Declaration's conclusory

23  claim that the permissible adaptations under the 2018 Tier 1 FOA are incompatible with

24  the language of the TPP Program appropriation.  Pls.' Opp'n at 17 (citing Kantor Decl.

25  ¶¶ 36-37).  This is both improper and unavailing for the reasons already discussed.

26

27

28

3. <u>The SMARTool and TAC Programs Have Been "Proven Effective"
Through "Rigorous Evaluation."</u>

Based on the documentation for the SMARTool and TAC programs, HHS has concluded that the programs have been proven effective through rigorous evaluation. Relying again on the Kantor Declaration, Plaintiffs assert that no program can meet this standard unless it has been tested against a control group. Pls.' Opp'n at 18-19. But as explained above, the Kantor Declaration has several fatal deficiencies, *see* § III, *supra*. Apart from the Kantor Declaration, Plaintiffs' only support for that assertion is a committee report for the 2009 TPP Program appropriation. Pls.' Opp'n at 18. That report states that "rigorous evaluation" of programs is "defined as randomized controlled trials." *Id.* (quoting H.R. Rep. 111-220 at 176 (July 22, 2009)). However, accepting this statement at face value would prove too much. Under the TPP Evidence Review used to select programs for replication under the 2010 and 2015 FOAs, a "[q]uasi-experimental study . . . in which subjects are not randomly assigned to an [sic] intervention and control groups" could be selected for replication. 2010 Tier 1 FOA at 45.[10] Thus, HHS has never interpreted "rigorous evaluation" to require randomized controlled trials. Plaintiffs' arguments that HHS must *return* to the TPP Evidence Review are unfounded. This was never HHS's practice, so the agency cannot return to it. In sum, Congress chose not to define "rigorous evaluation," giving HHS leeway to interpret the phrase, and HHS has interpreted the phase consistently throughout.

**B. The 2018 FOAs Provide Funds to Both SRA and Sexual Risk
Reduction Programs Without Unlawfully Favoring Either.**

Contrary to Plaintiff's assertions, the 2018 FOAs permit funding of sexual risk reduction programs and SRA programs because both types of programs can implement

---

[10] *See also* Mathematica Policy Research, Identifying Programs that Impact Teen Pregnancy, Sexually Transmitted Infections, and Associated Sexual Risk Behaviors: Review Protocol (version 5.0) (TPP Evidence Review Protocol) at 4-5, https://tppevidencereview.aspe.hhs.gov/pdfs/TPPER_Review%20Protocol_v5.pdf.

1    HHS's priorities this funding cycle, including the agency prioritizing specified

2    strategies for addressing sexual risk.  Plaintiffs, however, assert that only SRA

3    programs can receive funding under the 2018 FOAs because the strategies are

4    comprised of secret code words that implicitly "require abstinence-only messaging" to

5    be incorporated into all programs.  Pls.' Opp'n at 20-23.  To support that contention,

6    Plaintiffs rely entirely on the Kantor Declaration, which purportedly decodes the

7    language in the 2018 FOAs in ways directly contrary to its plain meaning.  *See id.*  To

8    say nothing of Plaintiffs' continued flawed reliance on the Kantor Declaration,

9    Plaintiffs' position is untethered to any precept of textual interpretation.  As the agency

10   that wrote the 2018 FOAs, HHS is in a far better position to interpret the meaning and

11   effect of the language used in those documents than is a former Planned Parenthood

12   employee who was uninvolved in their drafting.  Plaintiffs' reasoning also fails because,

13   even supposing that HHS's prioritized strategies promote particular types of abstinence

14   education in all programs, that does not mean that the strategies mandate "abstinence-

15   only program[s]."  Pls.' Opp'n at 22 (emphasis added).  Plaintiffs concede as much in

16   their Complaint where they state that they teach abstinence in their own sexual risk

17   reduction programs.  Compl. ¶ 97.  Providing limited abstinence education therefore

18   cannot be inherently incompatible with the types of sexual risk reduction programs for

19   Plaintiffs would seek TPP Program funding.

20        Finally, Plaintiffs do not acknowledge, much less respond to, Defendants'

21   explanation that the agency may incorporate acceptable policy priorities in the FOAs

22   that have incidental effects on the types of TPP Program grants HHS awards.  *See*

23   *generally id.* at 20-23.  *See also* Defs.' Mot. at 29-30.  This provides yet another ground

24   to reject Plaintiffs' baseless contention that HHS has unlawfully made sexual risk

25   reduction programs somehow ineligible for funding under the 2018 FOAs.

26

27

28

1

2

### C. The Administrative Record Amply Supports HHS's Approach to Considering Applications for Tier 1 and Tier 2 TPP Program Grants.

In light of the questionable results of the TPP Evidence Review reflected in the administrative record, HHS was justified in employing a new approach to identify effective programs.[11]  And, given the promise of the SMARTool and TAC programs, it was rational for HHS to incorporate those programs into the 2018 FOAs.  Plaintiffs dispute the rationale for the former decision, but not the latter one.[12]  *See* Pls.' Opp'n at 23-26.  Even as to the narrow issue Plaintiffs challenge, there is no merit to their assertions in support of that challenge.

First, Plaintiffs assert that an internal agency email was "tellingly left out of the administrative record," but any consideration of that email only confirms HHS's position.  *Id.* at 24.  Although characterizing "the TPP Cohort 1 evaluations" as "very strong," that email states that only "4 of 12 evaluations" for Tier 1 programs yielded positive results, in contrast to "8 of 16" for Tier 2 evaluations.  Decl. Benjamin Link Supp. Pls.' Mot. Prelim. or Permanent Inj. & Summ. J., ECF No. 16-3, PageID.1011.

---

[11] The breadth of the administrative record in this case is particularly compelling when one considers that HHS issues funding announcements for all of its grant award programs, under which more than 74,000 grants are awarded annually.  HHS Awards Overview, Tracking Accountability in Government Grant Spending, https://mschiavoni.github.io/TaggsAR2016/awards.html (last visited Aug. 13, 2018).

[12] The closest Plaintiffs come to addressing HHS's new approach is to suggest that HHS could have instead made a less "radical departure" by further restricting the existing list of programs eligible for replication.  Pls.' Opp'n at 26.  This, Plaintiffs contend, demonstrates that HHS failed to consider options other than the ones it implemented through the 2018 FOAs.  *Id.*  However, iterative pruning of eligible programs is precisely the approach employed under the TPP Evidence Review.  *See* TPP Evidence Review Protocol at 8-9.  Continuing with that approach is not an alternative to it.

These numbers are fully consistent with Defendants' statements that "three-quarters of the programs [eligible for Tier 1 grants under the 2010 TPP Evidence Review] had 'no impact or negative impact on teen behavior' when replicated" and that "Tier 2 programs—which were not 'proven' to be effective under TPPP Evidence Review—produced a higher proportion of positive outcome than Tier 1 replication programs." Defs.' Mot. at 32 (citations omitted). While Plaintiffs seek to re-direct attention to a document that frames the old approach's mixed results in a more favorable light, that does not change the eminent reasonableness of HHS's belief that it could improve its approach based on those spotty prior results. Wanting better results is hardly arbitrary or capricious.

Second, the meta-analysis Plaintiffs assert contradicts HHS's position does no such thing. *See* Pls.' Opp'n at 25 (discussing Randall Juras et al., *Panel Paper: Meta-Analysis of Federally Funded Teen Pregnancy Prevention Programs*, Association for Public Policy Analysis & Management (Nov. 2, 2017), (AR000017). Plaintiffs are correct that the study reached conclusions about specific program characteristics, but it also concluded that there was "minimal variation in impacts" among projects in the 2010-2015 TPP Program cohort and that those "impacts tended to be modest and similar in size" to a control group. Juras at 8, AR000015. In other words, the administrative record casts doubt on both the individual components of the programs selected through the TPP Review Process and the programs as wholes. Far from undercutting HHS's belief that it should try a new approach, the study on which Plaintiffs hang their hat supports that position.

### CONCLUSION

For the forgoing reasons and those set forth in Defendants' Motion, the Court should dismiss Plaintiffs' claims or, in the alternative, grant Defendants' summary judgment in their favor.

Dated:  August 13, 2018                    Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           JOSEPH H. HARRINGTON
                                           United States Attorney

                                           /s/ *Gary D. Feldon*
                                           GARY D. FELDON
                                           MICHAEL J. GERARDI
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave. NW, Room 7128
                                           Washington, D.C. 20530
                                           Tel: (202) 514-4686
                                           Fax: (202) 616-8460
                                           E-mail: gary.d.feldon@usdoj.gov

                                           *Attorneys for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gary D. Feldon*
GARY D. FELDON

Certificate of Service for
Reply in Support of Cross-Motion to
Dismiss or for Summary Judgment