UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PLANNED PARENTHOOD OF GREATER WASHINGTON AND NORTH IDAHO; PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS; and PLANNED PARENTHOOD OF THE HEARTLAND,<br><br>                Plaintiffs,<br><br>   v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX MICHAEL AZAR II in his official capacity as Secretary of the U.S. Department of Health and Human Services; and VALERIE HUBER in her official capacity as Senior Policy Advisor for the Office of the Assistant Secretary for Health at the Department of Health and Human Services,<br><br>                Defendants. | NO. 2:18-CV-0207-TOR<br><br>ORDER GRANTING DEFENDANTS' CROSS-MOTION TO DISMISS |

BEFORE THE COURT are Plaintiffs' Motion for Preliminary or Permanent Injunction and Summary Judgment (ECF No. 16); Defendants' Cross-Motion to Dismiss or, in the alternative, for Summary Judgment and Opposition to Plaintiffs' Motions for Preliminary Injunction and Summary Judgment (ECF Nos. 19; 20); and Unopposed Motion for Leave to Appear and File Brief as *Amici Curiae* in Support of Plaintiffs by Members of Congress (ECF No. 26). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Plaintiffs' Motion for Preliminary or Permanent Injunction and Summary Judgment (ECF No. 16) is **DENIED**; Defendants' Cross-Motion to Dismiss or, in the alternative, for Summary Judgment and Opposition to Plaintiffs' Motions for Preliminary Injunction and Summary Judgment (ECF Nos. 19; 20) is **GRANTED**; and Unopposed Motion for Leave to Appear and File Brief as *Amici Curiae* in Support of Plaintiffs by Members of Congress (ECF No. 26) is **DENIED as moot**.

## BACKGROUND

On June 21, 2018, Plaintiffs Planned Parenthood of Greater Washington and North Idaho, Planned Parenthood of the Great Northwest and Hawaiian Islands, and Planned Parenthood of the Heartland (collectively "Planned Parenthood") filed this Complaint against Defendants United States Department of Health and Human Services ("HHS"); the Secretary of HHS, Alex Michael Azar II; and the Assistant

Secretary for Health at HHS, Valerie Huber.  ECF No. 1.  Plaintiffs seek to enjoin Defendants from allocating funding under the 2018 Funding Opportunity Announcements ("FOAs") associated with the Teen Pregnancy Prevention Program ("TPP Program").  *Id.*

In the instant motion, Plaintiffs move to enjoin HHS from using the 2018 FOAs to select grantees and award funding.  ECF No. 16 at 9.  Defendants oppose Plaintiffs' Motion and request the Court dismiss Plaintiffs' claims or grant Defendants summary judgment.  ECF No. 19 at 9.

## FACTS

Unless otherwise indicated, the following facts are primarily drawn from Plaintiffs' Complaint and documents appended to the instant motion, and are accepted as true for the purposes of the motion to dismiss.  The TPP was created by Congress for the 2010 fiscal year ("FY").  ECF No. 1 at ¶ 2.  The appropriations languages states:  "$110,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants …."  ECF Nos. 1 at ¶ 28-30; 16-2 at 180, 235 (Ex. 2); Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3253.

Congress directed that "$4,455,000 shall be available to carry out evaluations … of teenage pregnancy prevention approaches." ECF No. 1 at ¶ 32; 123 Stat. 3253. Congress also directed the creation of the Office of Adolescent Health ("OAH"), which is responsible for implementing and administering the TPP Program. ECF No. 1 at ¶ 31. Plaintiffs assert that Congress has continuously funded the TPP Program at roughly the same levels, in the same manner, and with the same language. *Id.* at ¶ 33. Plaintiffs also allege that Congress has maintained separate funding streams for evidence-based programs and abstinence-only education programs. *Id.* at ¶ 34.

In April 2010, HHS, through OAH, issued two FOAs soliciting applications for Tier 1 and Tier 2 five-year grants. *Id.* at ¶ 37. The Tier 1 grant projects were designed to replicate programs that had demonstrated positive impact on key sexual behavior outcomes. *Id.* at ¶ 37. The Tier 2 grant programs were designed to develop and rigorously test new and innovative approaches to prevent teen pregnancy. *Id.* OAH funded 102 grantees through competitively awarded grants as part of the April 2010 FOAs. *Id.* at ¶ 43. Between FY 2010 and 2014, the projects reached more than half a million young people in 39 states and in the District of Columbia, trained a combined 6,100 facilitators, and created 3,800 community partnerships. *Id.* Plaintiffs allege that the number of evaluations with positive impacts exceeded the norm for large-scale evaluation efforts in other

fields. *Id.* at ¶ 44. During the 2010 to 2015 grant cycle, teen pregnancy rates declined and many, including HHS, cited the TPP Program as contributing to this trend. *Id.* at ¶ 46.

In January 2015, HHS, through OAH, issued new FOAs for a second cohort of five-year grants. *Id.* at ¶ 47. A final award decision for the 2015 FOAs was made by the OAH Director. ECF No. 1 at ¶ 51. In July 2015, HHS awarded 81 new five-year TPP Program grants. *Id.* at ¶ 52. In May 2017, President Trump's proposed budget for FY 2018 called for eliminating the TPP Program and sought a $277 million investment in extending abstinence-only education. *Id.* at ¶ 57. On June 5, 2017, Valerie Huber was appointed as Chief of Staff for the Office of the Assistant Secretary of Health ("OASH"). *Id.* at ¶ 58. Ms. Huber is now the Senior Policy Adviser at OASH. *Id.*

In July 2017, HHS terminated all 81 TPP Program grants. ECF No. 1 at ¶ 63. In February 2018, nine of the grantees, including Plaintiffs, filed suit in four district courts to challenge the termination of their TPP Program grants. *Id.* The courts, including this Court, granted relief in favor of the grants and ordered HHS to process those grantees' applications for continued TPP Program funding. *Id.* Appeals are pending.

On March 23, 2018, Congress fully funded the TPP Program for FY 2018, directing that "$101,000,000 shall be for making competitive contracts and grants

to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants …." ECF No. 1 at ¶ 64; Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 123 Stat. 733. Congress also appropriated $25 million and $75 million for two abstinence-only education programs. ECF No. 1 at ¶¶ 34, 65.

Plaintiffs allege that Defendants seek to repurpose the TPP Program to fund abstinence-only content rather than evidence-based programs through the FOAs. *Id.* at ¶ 67. Plaintiffs assert that the 2018 Tier 1 FOA does not require applicants to replicate programs that have been proven effective through rigorous evaluation. *Id.* at ¶ 70. It deletes the definition of "Evidence-Based Teen Pregnancy Prevention Programs." *Id.* It eliminates all references to HHS's evidence review and the list of evidence-based programs culled from nearly a decade of analysis and evaluation, even though HHS released a new installment of the evidence review the same week as Defendants issued the FOAs. *Id.* The phrase "evidence-based" appears nowhere in that FOA, and the words "proven" and "rigorous evaluation" only appear when describing evaluations that will occur after funding. *Id.*

The 2018 Tier 1 FOA declares that it will "fund the evaluation of replication strategies that focus on protective factors shown to prevent teen pregnancy,

improve adolescent health, and address youth sexual risk holistically." ECF Nos. 1 at ¶ 71; 16-2 at 23 (Ex. 2). It instructs prospective grantees to replicate "a risk avoidance approach or a risk reduction approach" that incorporates the common characteristics of either the "Center for Relationship Education's Systematic Method for Assessing Risk-Avoidance Tool (SMARTool)" or the "Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs" ("TAC"). ECF Nos. 1 at ¶ 71; 16-2 at 18. "Sexual Risk Avoidance" is defined as "the natural approach for an emphasis on sexual delay." ECF Nos. 1 at ¶ 72; 16-2 at 21. "Sexual Risk Reduction" is "the natural approach for an emphasis on cessation support." ECF Nos. 1 at ¶ 72; 16-2 at 21. "Sexual risk" means "engaging in any behavior that increases one's risk for any of the unintended consequences of sexual activity, including, but not limited to pregnancy." ECF Nos. 1 at ¶ 72; 16-2 at 21-22.

Plaintiffs argue that SMARTool and TAC have not been evaluated as a program or incorporate any of the findings of the evidence review or the TPP Program. ECF No. 1 at ¶¶ 74-75. Plaintiffs emphasize that TAC could not incorporate any of the findings given that it was created two years before the TPP Program. *Id.* at ¶ 75. The 2018 Tier 1 FOA and guidance issued by OAH make clear that prospective grantees "'have the freedom to choose *any curriculum* without regard to whether it has been proven effective, proven ineffective, or ever

rigorously evaluated at all." *Id.* at ¶ 76 (emphasis in original). It does not require "replication" of the selected curriculum. *Id.* at ¶ 77.

Plaintiffs insist that the substance of the 2018 Tier 1 FOA is nearly indistinguishable from the 2018 Tier 2 FOA, which instructs applicants to choose a curriculum so long as it "implement[s] protective factors and/or either elements from the SMARTool or the Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs." ECF Nos. 1 at ¶ 78; 16-2 at 113.

Plaintiffs state that the 2018 Tier 1 FOA also incorporate several changes to the scoring metric for grant applicants. ECF No. 1 at ¶ 79. It added a new application criterion worth a quarter of the available points for "Realistic, Practical, and Meaningful Application of Project Expectations and Priorities." ECF Nos. 1 at ¶ 80; 16-2 at 65. This criterion rewards "clearly communicating that teen sex is a risk," integrate "optimal health into every component of the project," and provide "cessation support" for those who are already sexually active "to make healthier and risk-free choices in the future." ECF Nos. 1 at ¶ 80; 16-2 at 65-66.

The FOAs also allow the grantee to determine what is or is not "age appropriate" as they are meant to conduct their own review of all materials to ensure they are age appropriate. ECF No. 1 at ¶ 84. Plaintiffs emphasize that the 2010 and 2015 FOAs relied upon scientifically determined cognitive and social development of young people at various ages. ECF No. 1 at ¶ 84. The 2018 Tier 1

FOA also changed the definition of "Medical Accuracy," where the information is no longer required to be "[v]erified or supported by the weight of research conducted in compliance with accepted scientific methods." ECF Nos. 1 at ¶ 85; 16 at 43. The 2018 Tier 2 FOA does away with the definition of the term entirely. ECF No. 1 at ¶ 85. Contrary to the previous two FOAs, final award decisions will be made by the Director of OAH "in consultation with the Assistant Secretary of Health." ECF Nos. 1 at ¶ 87; 16-2 at 69. Once issued, award decisions are final and may not be appealed. ECF Nos. 1 at ¶ 87; 16-2 at 69.

Plaintiffs assert that they considered applying for grants under the 2018 FOAs because they were unsure if they would receive continued funding under their TPP Program grants as Defendants would not commit before July 1, 2018. ECF No. 1 at ¶ 93. Plaintiffs argue that the new 2018 FOAs put them at such a disadvantage for 2018 TPP Program funding that they cannot compete. *Id.* at ¶ 94. Thus, Plaintiffs have not submitted 2018 TPP Program applications. *Id.* at ¶ 99.

## DISCUSSION

### I. Defendants' Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial, where the court's inquiry is limited to the allegations in the complaint; or factual, where the court may look beyond the

complaint to consider extrinsic evidence. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint and construe the pleadings in the light most favorable to the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Id.* The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences. *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. of Civ. P. 12(b)(6). To survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. When deciding, the court may consider the plaintiff's allegations and any "materials incorporated into the complaint by reference." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061

(9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

**A. Standing**

As an initial matter, the Court addresses whether Plaintiffs have standing to assert their claims. To satisfy Article III's standing requirements, the plaintiff must show the follow three elements: (1) the "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) there must be a "causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable' to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, brackets, and citations omitted).

A plaintiff must have "a personal stake in the outcome, distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S.Ct.

1916, 1923 (2018) (internal quotation marks and citations omitted). "That threshold requirement ensures that we act as *judges*, and do not engage in policymaking properly left to elected representatives." *Id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013)) (emphasis in original).

## 1. Injury in Fact

Defendants argue that Plaintiffs cannot meet their standing burden because they have not suffered an injury in fact. ECF No. 19 at 20. Plaintiffs allege that they are harmed because the 2018 FOAs put Plaintiffs at a competitive disadvantage. ECF No. 1 at ¶¶ 94-99. Defendants emphasize that Plaintiffs chose not to compete for grants under those FOAs. ECF No. 19 at 20. Defendants argue that in the context of bid protests to government contract solicitations, only "an actual or prospective bidder" with "a direct economic interest … has standing to challenge a contract award." ECF No. 19 at 20; *see Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013); *see also Cohn v. United States ex rel. IRS*, No. CIV 98-1214-PHX-RGS, 1999 WL 1485194, at *2 (D. Ariz. Apr. 13, 1999). Defendants contend that Plaintiffs "are left with only the kind of abstract interest in HHS's proper administration of the TPP Program grants shared by all citizens and long held to be insufficient to constitute a particularized injury in fact." ECF No. 19 at 20-21.

Plaintiffs assert that when agency conduct renders a competitor unable to fairly compete, that competitor has suffered a sufficient injury in fact. ECF No. 29 at 9; *City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087, 1094 (C.D. Cal. 2018). Plaintiffs argue that their injury in fact is their "inability to compete on an equal footing" in the application process. ECF No. 29 at 9; *City of Los Angeles*, 293 F. Supp. 3d at 1094.

Plaintiffs distinguish *Orion Tech* and *Cohn* by arguing that these are post-award bid protests, which means that the complaints were filed after the bid proposals were due. ECF No. 29 at 9. Plaintiffs here filed the Complaint before the application deadline for the 2018 FOAs, making the more appropriate analogy to cases where a complaint is filed before the bid proposal due date. *Id.* In pre-award bid protest cases, Plaintiffs insist that standing exists for a plaintiff who shows that it was a prospective bidder at the time it filed its protest, even if the plaintiff "never submitted a bid in response to the [proposal] and thus [wa]s not an actual bidder." ECF No. 29 at 9-10; *see CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015); *see also Geo-Med, LLC v. United States*, 135 Fed. Cl. 742, 748 (Fed. Cl. 2017); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2009). Plaintiffs also argue that their involvement with the TPP Program under the 2010 and 2015 FOAs and their interest in continued involvement in the TPP Program makes clear that they are prospective competitors

under the 2018 FOAs.  ECF No. 29 at 10; *see City of Los Angeles*, 293 F. Supp. 3d at 1093.

Defendants emphasize that Plaintiffs fail to address the second requirement in the context of bid protests, which is "a direct economic interest."  ECF No. 34 at 10; *Orion Tech.*, 704 F.3d at 1348.  Plaintiffs merely argue that they are prospective bidders, but fail to identify a purported direct economic interest.  ECF No. 34 at 10 n.2.  Defendants cite that "[t]o prove a direct economic interest[,] … a putative prospective bidder … is required to establish that it had a 'substantial chance' of receiving the contract."  ECF No. 34 at 10-11; *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006) (citations omitted).  Defendants argue that without submitting a proposal for TPP Program funding or alleging the nature of the programs Plaintiffs would have proposed, Plaintiffs have not shown that they have any chance of receiving such funding.  ECF No. 34 at 11.  Defendants also note that Plaintiffs' claim to prospective bidder status fails because a prospective bidder must "exercise reasonable diligence in pursuing its" legal remedies, such as immediately filing for relief in court.  ECF No. 34 at 10 n.2; *Geo-Med, LLC*, 135 Fed. Cl. at 748; *CGI Fed. Inc.*, 779 F.3d at 1351.

The Court considers the parties' analogy to a bid protest.  In *Orion*, only an "interested party" has standing.  704 F.3d at 1348.  An interested party is defined as "an actual or prospective bidder whose direct economic interest would be

affected by the award of the contract." *Id.* To show direct economic interest, a party must show that it had a "substantial chance" of winning the contract. *Id.* (citing *Rex Serv. Corp.*, 448 F.3d at 1308). Yet, there is an exception to this standard "when a prospective bidder challenges the terms of the solicitation itself, prior to actually submitting a bid." *Id.* (citing *Weeks Marine*, 575 F.3d at 1361). The bidder can then establish standing by demonstrating that it suffered a "non-trivial competitive injury which can be redressed by judicial relief." *Id.* (quoting *Weeks Marine*, 575 at 1362) (finding that the prospective bidder established a non-trivial competitive injury where it showed an interest in bidding, sent in complaints and concerns, noted its contracting ability, and suggested it would like to receive a substantial percentage of the contracts). In this case, Orion was an actual bidder and prospective bidder standing was not an issue. *Id.*

In *Cohn*, the District of Arizona determined that the plaintiff lacked standing after he brought suit following the sale of his defaulted property. *Cohn*, 1999 WL 1485194, at *2. The court found that because the plaintiff did not submit a bid, he was merely attempting to assert a claim that the government be administered according to law, a right possessed by every citizen, which assertion of standing was rejected. *Id.*; *see also Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587 (2007) (rejecting taxpayer standing).

In *CGI Federal Inc.*, the plaintiff was a prospective bidder with standing because it "promptly initiated and diligently pressed its protest" prior to the closing of the bid and thereafter diligently pursued its rights, filing for relief in court. 779 F.3d at 1351. CGI also showed a direct economic interest because it argued that the payment terms were illegal and caused it to protest instead of bid. *Id.* The court noted that CGI had a "definite economic stake in the solicitation." *Id.*

In *Geo-Med, LLC*, the plaintiff was a prospective bidder who protested twice and filed suit prior to the close of the solicitation period. 135 Fed. Cl. at 748. The court also found it had non-trivial competitive injury as it was deprived of the ability to compete for the contract, which will likely deprive it of business in which it currently engaged in with a number of Veterans Affairs facilities. *Id.*

This Court finds that the post-award bid cases, *Orion* and *Cohn*, are less applicable than the prospective bidder standing found in *CGI Federal Inc.* and *Geo-Med, LLC*. Plaintiffs here are more akin to a prospective bidder who promptly initiated a protest by filing a Complaint in this Court prior to the closing of the grant process.

The situation here is most comparable to competitor standing. In *City of Los Angeles*, Los Angeles challenged a federal grant program that allocated bonus points if the city certified that it cooperated with federal immigration authorities. 293 F. Supp. 3d at 1093. The Central District of California found that Los Angeles

had standing because a grant competitor may suffer "competitive injury." *Id.* at 1094. "[W]hen challenged agency conduct allegedly renders a [competitor] unable to fairly compete for some benefit, that [competitor] has suffered a sufficient 'injury in fact' and has standing." *Id.* (quoting *Preston v. Heckler*, 734 F.2d 1359, 1365 (9th Cir. 1984)). A grant competitor need not show that it would have received the grant but for the disadvantage it faced, but that the injury in fact is "the inability to compete on equal footing in the bidding process …." *Id.* (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993)). This case is currently on appeal.

The Ninth Circuit has recognized the doctrine of "competitor standing," which is "grounded in the basic law of economics that increased competition leads to actual injury." *Int'l Bhd. of Teamsters v. U.S. Dep't of Transportation*, 861 F.3d 944, 950 (9th Cir. 2017) (internal quotation marks and citations omitted). "[E]conomic actors suffer an injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." *Id.* (quoting *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010)). This idea is similar to the "non-trivial competitive injury" standard used for prospective bidders. The question then becomes whether Plaintiffs here have competitor standing.

1      Plaintiffs assert that the allegedly unlawful changes made by HHS in the

2      2018 FOAs put them at such a disadvantage for funding that they cannot compete.

3      ECF No. 1 at ¶ 94. Plaintiffs explain that 2018 FOAs' largest amount of points are

4      reserved for applicants proposing sexual risk avoidance, or abstinence-only

5      programming, even if that programming is not evidence-based. *Id.* at ¶ 95.

6      Plaintiffs state that their evidence-based, sexual risk reduction programming

7      contradicts the abstinence-only messaging favored by the FOA such that they

8      cannot incorporate it and maintain their respective programs' fidelity. *Id.*

9      Plaintiffs argue that they are then automatically ineligible for one-quarter of the

10     available points. *Id.* The new point system also reduces the number of points

11     allocated according to an applicant's demonstration of the need of its target

12     population or community from 20 to 15 points, depressing Plaintiffs' ability to

13     compete by carefully identifying those young people most in need of their service

14     areas and designing proposals tailored to those target populations. *Id.* at ¶ 96.

15     Plaintiffs assert that they are committed to implementing evidence-based and

16     age-appropriate sexual and reproductive health programming that is consistent with

17     their mission to provide complete and stigma-free education to young people in

18     their communities. *Id.* at ¶ 97. Plaintiffs note that they provide abstinence

19     education, but contend that their commitment to evidence-based and age-

20     appropriate programming prevents them from promoting abstinence-only

education.  *Id.*  Plaintiffs insist that none of Plaintiffs' programming can be made

to be abstinence-only.  *Id.*

The 2018 Tier 1 FOA's purpose is:

> to replicate and scale up programs that include the protective factors
> shown to be effective in the prevention of risk behaviors, including
> teen pregnancy.  The overall goal is to promote healthy adolescence
> and to address youth sexual risk holistically or across the interrelated
> factors that promote optimal health and result in healthy decision-
> making and teen pregnancy prevention.

ECF No. 16-2 at 11 (Ex. 1).  All eligible applicants will be assessed according to

the demonstrated need of the community and populations served for 15 points.  *Id.*

at 64.  The program receives 20 points for its technical approach, 15 points for

capacity and partnerships, 10 points for project management and experience, 10

points for performance measures and evaluation plan, and 5 points for

reasonableness of budget.  *Id.* at 64.

25 points are allotted to the realistic, practical, and meaningful application of

project expectations and priorities.  *Id.*  This section requires the replication of one

of the two effective programs, SMARTools or TAC.  *Id.* at 65.  It also requires

"[w]eaving the goal of optimal health into every component of the project."  *Id.*

The program must clearly communicate that teen sex is a risk behavior for

pregnancy and sexually transmitted infections, as well as sociological, economic,

and other related risks.  *Id.*  The program must provide skills to avoid sexual risk

and provide cessation support, which means provide "affirming and practical skills for those engaged in sexual risk to make healthier and risk-free choices in the future." *Id.* at 66, 22.

The purpose of the 2018 Tier 2 Program "is to develop and test new and innovative strategies to prevent teen pregnancy, promote healthy adolescence and address youth sexual risk holistically to result in healthy decision making and future thriving by enhancing protective factors …." *Id.* at 107 (Ex. 2). Applications are allotted 25 points for background and need; 30 points for project approach and alignment to expectations and priorities; 20 points for capacity, experience, and partnership; 10 points for project management; 10 points for performance measures and evaluation plan; and 5 points for reasonableness of budget. *Id.* at 155. Tier 2 also deems sexual risk avoidance and cessation support as priorities. *Id.* at 115.

The Court is not persuaded that the factors in the 2018 FOAs create an unequal footing for Plaintiffs to compete for the grant funding. *See City of Los Angeles*, 293 F. Supp. 3d at 1094. Plaintiffs concede that they teach abstinence among other prevention tools. *See* ECF No. 1 at ¶ 97. The 2018 FOAs do not require that a program only teach abstinence, but merely requires recipients to provide cessation support and skills to avoid sexual risk, such as pregnancy. This Court declines to extremely interpret these requirements to mean that HHS is

requiring abstinence-only programs. The plain language of the 2018 FOA simply provides additional points for those programs providing cessation support and sexual risk avoidance skills. These skills are also provided by Plaintiffs' programs. The Court is not persuaded that the 2018 FOAs require Plaintiffs to go against their commitment of implementing evidence-based programs in favor of abstinence-only education. The Court finds that Plaintiffs fail to establish that they would be unable to fairly compete for the grant. The Court notes that it is not making any determination regarding whether the 2018 FOAs are contrary to law, but merely finds that Plaintiffs do not sufficiently plead competitor standing to establish an injury in fact.

### 2. Redressability

Even if Plaintiffs establish an injury in fact, the Court finds that Plaintiffs are unable to show redressability. Defendants insist that Plaintiffs lack standing because success on their claim would not redress their purported injury. ECF No. 19 at 21. Defendants contend that voiding the 2018 FOAs and enjoining HHS from disbursing funds pursuant to the FOAs would only prevent successful applicants from receiving funds and would not result in the receipt of any funds by non-applicants like Plaintiffs. *Id.* The funds were appropriated in FY 2018 and must be spent by September 30, 2018. *Id.* Defendants argue that if the 2018 FOAs were voided, it would be impossible for HHS to draft and issue new FOAs, receive

applications, process those applications, and issue new awards by the end of the fiscal year.  *Id.*  Defendants assert that "[t]he 'psychic satisfaction' Plaintiff[s] may receive from preventing rival organizations from receiving these funds 'is not an acceptable Article III remedy.'"  ECF No. 19 at 21; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Plaintiffs respond that vacatur of the 2018 FOAs would not force Defendants to leave their appropriation unspent as they have numerous options for obligating the remaining funds.  ECF No. 29 at 10.  Plaintiffs suggest that once Defendants fully fund the 2015-2020 grantees with this year's appropriations, only a small fraction of the appropriation will remain.  *Id.* at 10 n.1.  Plaintiffs state that Defendants could use the remaining fund to grant carryover requests to increase the budgets for existing projects rather than use unobligated balances from prior years to fund portions of the 2018 awards owed to the 2015 grantees.  *Id.*

Plaintiffs also argue that vacatur would alleviate their competitive injury caused by the immediate "increase" of competition and attendant burdens of competing on the 2018 FOAs' unlawful terms.  ECF No. 29 at 10; *Sherley*, 610 F.3d at 74.  Plaintiffs further request that the Court enjoin and preserve awards for FY 2018, which they argue is a well-established remedy that would protect applicants' opportunities to pursue funding beyond September 30, 2018.  ECF No. 29 at 10-11; *City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421,

1426 (D.C. Cir. 1994). Plaintiffs emphasize that courts refuse to find competitive injury cases nonjusticiable where doing so would likely render the underlying activity "unreviewable." ECF No. 29 at 11; *Nat. Law Party of U.S. v. Fed. Elec. Comm'n*, 111 F. Supp. 2d 33, 50 (D.D.C. 2000). Plaintiffs contend that "[t]o find otherwise would allow an agency to avoid judicial review of its unlawful actions simply because it began the competition too close to the end of the fiscal year." ECF No. 29 at 11.

Defendants assert that Plaintiffs' failure to request affirmative relief is fatal to their showing of redressability. ECF No. 34 at 12. In regards to Plaintiffs' suggestion that HHS could fully fund the 2015-2020 grantees and use the remaining funds to grant carryover requests, Defendants insist that this "creative accounting" ignores that Plaintiffs have never sought to compel HHS to do so. *Id.* Defendants emphasize that Plaintiffs have not articulated a legal basis for the Court to issue such an order and sovereign immunity bars any form of relief against the federal government that is not explicitly permitted by Congress. *Id.* In regards to Plaintiffs' suggestion that the Court enjoin HHS from disbursing the funds under the 2018 FOAs, Defendants argue that this injunction would be entirely consistent with the funds reverting to the Treasury. *Id.*

Defendants reject Plaintiffs' argument that vacatur would alleviate the competitive injury because the injury would only be redressed by HHS issuing

TPP Program FOAs without the features Plaintiffs challenge as unfavorable to them. *Id.* Defendants note that Plaintiffs never requested that affirmative relief, but only seek prohibitory relief. *Id.* Defendants also contend that Plaintiffs own failure to request appropriate interim relief does not make HHS's actions reviewable under the "capable of repetition, yet evading review" exception. ECF No. 34 at 13. Defendants conclude that a plaintiff who sought the appropriate interim and permanent relief could have a redressable injury regardless of the end of the fiscal year, but Plaintiffs here have failed to seek the necessary relief. *Id.*

In *City of Houston*, the court dismissed Houston's claim as moot because the grant funds were contractually obligated to another recipient and the appropriation had lapsed. 24 F.3d at 1426-27. The court found a narrow equitable exception if a case is timely filed before an appropriation has been granted or lapsed. *Id.* If this is the case, a court may grant a preliminary injunction so that the fund from an appropriation that is about to lapse will remain available pending a dispute's resolution. *Id.*

Here, Plaintiffs request that this Court enjoin HHS from awarding or disbursing any funds pursuant to the 2018 FOAs. ECF No. 1 at 38. Yet, a court may only enjoin a disbursement of funds pending a dispute's resolution. *See City of Houston*, 24 F.3d at 1426-27. This Court files this Order prior to September 1, 2018 when HHS will issue grants to meet its September 30, 2018 fiscal year

deadline to obligate funds.  ECF No. 19 at 10.  It is then not necessary for this

Court to extend the grant period under *City of Houston* and it would be

inappropriate to enjoin and preserve the awards for FY 2018 after the Court has

already resolved the dispute.

The equity exception allows courts "to take action to preserve the status quo

of a dispute and protect their ability to decide a case properly before them."  *City of*

*Houston*, 24 F.3d at 1426 (citation omitted).  The status quo is maintained here as

the appropriations period has not yet expired, but extending this period beyond the

decision of this case "conflicts with the constitutional provision vesting sole power

to make such authorization in the Congress."  *Id.* (citation omitted).  This Court

then rejects Plaintiffs' request to enjoin and preserve the awards for FY 2018 under

the equitable exception.

In *Natural Law Party*, the court determined that the plaintiffs had standing to

challenge their exclusion from presidential debates by the Federal Election

Commission ("FEC") even though the election had passed.  111 F. Supp. 2d at 36.

The court found that plaintiffs satisfied the redressability requirement because

"[p]laintiffs need not demonstrate that judicial review … will lead to the ultimate

relief sought …. Rather, a remand that would leave the agency free to exercise its

discretion in a proper manner, then, could lead to agency action that would redress

petitioner's injury."  *Id.* at 50 (internal quotation marks and citations omitted)

(emphasis in original).  The court noted that "[a]ll regulatory agencies enjoy some measure of enforcement discretion, but that cannot render the agency's legal decision-making unreviewable."  *Id.*  A finding that the FEC's dismissal was contrary to law would force the FEC to re-examine the challenged criteria, and the court's limited job is then met of correcting a legal error in the agency's decision.  *Id.*

Here, Plaintiffs request that the Court find the 2018 FOAs contrary to law and enjoin HHS from using the 2018 FOAs to review applications for TPP Program grant funding.  ECF No. 1 at 38-39.  As discussed above, the Court finds that enjoining HHS from being able to disperse its funds during FY 2018 would be an overreach of this Court's power.  The Court declines to order HHS to fully fund the 2015-2020 grantees when this relief was not specifically requested in Plaintiffs' Complaint, but is a mere suggestion on how HHS may alternatively spend its appropriations.  The Court is also not persuaded that *Natural Law* is applicable to the situation at hand.  Finding the new FOA requirements contrary to law and forcing HHS to re-examine its criteria is insufficient to address Plaintiffs' alleged competitive injury.  Even assuming that Plaintiffs have a specific injury, this injury would not be redressed by Defendants reconsidering the 2018 FOA requirements when the Court has already deemed it inappropriate to enjoin HHS under the equitable exception.  Plaintiffs fail to establish that their alleged injury is capable

of redressability when they merely request that the Court find the FOAs contrary to law and enjoin HHS from reviewing applications and awarding funds under the FOA requirements. *See* ECF No. 1 at 38-39. The Court declines to unnecessarily extend the judicial power beyond its appropriate reach to enjoin Congress from allocating and spending money when Plaintiffs do not have a concrete injury capable of being redressed by a favorable decision.

The Court then need not address the parties' remaining arguments on the merits as Plaintiffs do not have standing to bring this suit. The Court denies as moot the Unopposed Motion for Leave to Appear and File Brief as *Amici Curiae* in Support of Plaintiffs by Members of Congress. ECF No. 26. The Court also notes that it does not consider the disputed Kantor Declaration (ECF No. 31), and thus Plaintiffs' Motion for Leave to File Sur-Reply is denied as moot. ECF No. 40.

## II. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

F.3d 1122, 1127 (9th Cir. 2000) (en banc); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc).

After fully considering Plaintiffs' Complaint, the Court finds that Plaintiffs cannot prevail and it would be futile to give them an opportunity to amend. Plaintiffs do not have standing to assert their claims and there are no set of facts Plaintiffs could allege to overcome their lack of standing. Plaintiffs' pleading then cannot possibly be cured by other facts and the Court dismisses their claims with prejudice.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Preliminary or Permanent Injunction and Summary Judgment (ECF No. 16) is **DENIED**.

2. Defendants' Cross-Motion to Dismiss or, in the alternative, for Summary Judgment and Opposition to Plaintiffs' Motions for Preliminary Injunction and Summary Judgment (ECF Nos. 19; 20) is **GRANTED**.

3. Unopposed Motion for Leave to Appear and File Brief as *Amici Curiae* in Support of Plaintiffs by Members of Congress (ECF No. 26) is **DENIED as moot**.

4. Plaintiffs' Motion for Leave to File Sur-Reply (ECF No. 40) is **DENIED as moot**.

5.  The claims asserted in Plaintiffs' Complaint (ECF No. 1) are **DISMISSED**

**without leave to amend**.

The District Court Executive is directed to enter this Order, enter

**JUDGMENT** for Defendants, furnish copies to the parties, and **CLOSE** the file.

**DATED** August 31, 2018.



THOMAS O. RICE
Chief United States District Judges